CHRISTIANCY and CAMPBELL, JJ., concurred.

GRAVES, CH. J., did not sit in this case.

———◇———

## James Campbell v. Augustus Skinner.

*Promissory notes: Consideration: Judgment: Compromise: Good faith.* The promissory note sued upon in this case, which is supported by no other consideration than a judgment against the maker in favor of the payee, which judgment has been compromised and settled by the wife and friends of the judgment debtor from their own means, on the faith that they were thereby relieving him of the entire liability upon such judgment, and under an agreement that the judgment should thereupon be assigned to them, is held invalid as between the parties.

CAMPBELL *v.* SKINNER.

*Contracts: Fraud: Secret arrangement: Promissory notes.* Any secret arrangement between the parties to such judgment whereby the judgment debtor was to pay some further sum on account of such judgment, or to remain liable so to pay, notwithstanding such compromise agreement between his wife and friends and the judgment creditor, and the performance thereof in the honest belief that it was to relieve the debtor from his entire liability on such judgment, would be so far fraudulent and illegal as not to be enforceable on behalf of either party against the other; and the debtor himself might insist upon its illegality.

*Promissory note: Consideration: Abandoned agreement: Compromise.* Where a judgment debtor has given his promissory note for a portion of the amount of the judgment against him, as a part of some contemplated arrangement in reference to the judgment, and this arrangement is afterwards abandoned for another compromise arrangement made by the judgment creditor with third persons, which is inconsistent with the idea of leaving such a note outstanding against the debtor to be paid in addition to such compromise, such latter agreement, when performed, would operate, in the absence of any showing of a contrary intent, to cut off or invalidate the note, as between the parties to it.

*Submitted on briefs April 30. Decided July 21.*

Error to Wayne Circuit.

*F. H. Canfield,* for plaintiff in error.

*Moore & Griffin,* for defendant in error.

CHRISTIANCY, J.

This was an action of assumpsit brought by defendant in error as executor of Roderick W. Skinner, against Campbell, plaintiff in error, upon a promissory note of five hundred dollars, purporting to have been given by Campbell to said R. W. Skinner or order, July 1, 1864, payable on or before six years.

"Prior to the date of the note" (I quote from the condensed statement of facts contained in the brief of counsel for plaintiff in error, which, with the explanations I have inserted, I find to be entirely correct) "R. W. Skinner, the payee, had recovered a judgment in the U. S. court, which he was attempting to enforce by proceedings [bill] in equity [in that court].

"It was claimed by the plaintiff below that this note was given on account of [or in some way to apply on] this judgment [or as collateral thereto].

"About the date of the note [or certainly a few days after] negotiations for a compromise were had between Skinner and Campbell, the final terms of which were reduced to writing, as follows:

"'This memorandum is to witness that I have this day agreed to compromise the debt or claim I hold against James Campbell now in litigation on the chancery side of the United States circuit court for the district of Michigan as follows, viz.:

"'The wife of James Campbell, by mortgages in which said James joins as a party, has secured the payment of one thousand dollars in five years from date, by the pledge of one hundred acres of the Swan Creek farm, so called, in Monroe county, Michigan, and of fifty-eight acres, a part of the homestead farm of Elias Vreeland, late of Brownstown, in Wayne county, now deceased. It being understood that the above lands are incumbered to some extent by a claim for dower and other claims, and litigation on them, it is distinctly provided that until all such claims, litigation and other incumbrances are removed, the undersigned shall hold his judgment and bill in chancery above alluded to, against said Campbell, the judgment being considered as collateral to said mortgages, and the amount thereof, viz.: $1,000, being the amount to be collected against said Campbell.

"'It is further agreed, that Mrs. Caroline Campbell, or the said James, or his friends, may have the privilege at any time for the space of sixty days, of taking up said mortgages, by paying the sum of nine hundred dollars, and the interest from their date.

"'Upon such payment being made, or the perfecting the title, and removing the incumbrances from the Swan Creek property above mentioned, I agree to discharge said claim or judgment, and the suit or cause pending thereon, or to assign the same to, or hold for the benefit of Mrs. Caroline Campbell, or such other friends or relatives of said James Campbell as may advance the money above mentioned, or otherwise perfect the securities of the undersigned, and also,

that at any time when the incumbrances may be removed from the Swan Creek property (one hundred acres), I will discharge or assign, as said James Campbell or his wife may order, the other mortgage above mentioned. All expenses hereafter incurred in managing the above business, in executing and discharging papers relating to same, are to be borne and paid by said Campbell.

" 'Detroit, July 6, 1864.

" '(Signed) R. W. SKINNER.' "

It will be noticed that this agreement is dated July 6, 1864, five days after the date of the note in question; that Skinner agrees to accept the mortgages for one thousand dollars, when the land shall be cleared of incumbrances, or, in lieu thereof, nine hundred dollars in cash, in full satisfaction of the judgment, with the proviso that, until the land should be cleared of incumbrances (or the nine hundred dollars cash should be paid), he would hold the judgment as collateral to the mortgages "and the amount thereof, viz.: one thousand dollars, *being the amount to be collected against said Campbell;*" that Campbell or *his friends* were to have the privilege of paying the nine hundred dollars cash and taking up the mortgages; that upon perfecting the title to the mortgaged property or the payment of the nine hundred dollars cash, Skinner was to discharge said claim or judgment and the suit or cause pending thereon, or to assign the same to, or hold for the benefit of Mrs. Caroline Campbell, or *such other friends or relatives* of said James Campbell *as may advance the money above mentioned,* or perfect the securities.

And, throughout this agreement, the judgment is treated as entire, and no intimation given that any thing had ever been paid upon it, or that any other security was, or was expected to be, given to Skinner for any part of it.

Within the time agreed upon, as the evidence shows (and there is none to the contrary), Edmund Hall, on behalf of Campbell, paid the nine hundred dollars and interest, to the solicitor of Skinner; and the judgment from that

time forward was treated by Skinner's solicitor, as well as by Hall, as belonging to Hall, who in pursuance of the compromise agreement had advanced the money on behalf of Campbell. And by that agreement and this advance it is clear that he became entitled to it as his security.

Hall testifies (and there is no controversy upon the point) that when he advanced the money, the understanding was that it was in full of all demands and claims growing out of the judgment or decree in the United States court; and certainly the compromise agreement would authorize no other fair inference. In fact, it is not claimed that he had any reason to believe that the whole judgment was not to be assigned to him, or that Campbell had given this note to apply in any way upon it, or paid, or agreed to pay any thing upon or on account of it, except this nine hundred dollars cash, which Hall assented to pay on the faith of the understanding that this was to free Campbell from all his liability on account of that judgment.

If, then, any secret arrangement did in fact exist between Campbell and Skinner, unknown to Hall or Mrs. Campbell, by which Campbell was to pay some further sum on account of that judgment, or remain liable so to pay, this compromise agreement would operate as a trap to, and a fraud upon Mrs. Campbell, who had, on the faith of it, consented to mortgage her own property, and upon Hall, who, on the faith of it, had, as the friend of Campbell or his wife, consented to advance the money, in the honest belief that he was thereby relieving Campbell of his entire liability. No one can say that either Hall would have advanced the money, or Mrs. Campbell given her mortgages, had any such secret agreement been understood. And though they might, on discovering the fraud, elect to waive it, yet, any secret agreement, entered into between Skinner and Campbell for ' the fraudulent purpose and with the intent thereby to deceive parties into the giving of mortgages or the advancing of money under and on the faith of the written compromise agreement, would be so far fraudulent and ille-

gal that no court should enforce it, in behalf of either against the other; and in this view Campbell himself might insist upon its illegality.

It did not expressly appear from the evidence what was the consideration for which this note was given, but it was not claimed or pretended that there was any other consideration than the judgment in question. Nor was there any evidence which was admissible as against the defendant upon the trial, that the note was given upon a secret understanding with the intention of deceiving Hall or any other person into the advancement of money under the written compromise agreement made five days after; but the testimony of Hine, the plaintiff's witness, called out on the direct examination, may be treated as an admission of the plaintiff, tending to prove this fraudulent and illegal secret agreement with the fraudulent and illegal intent already indicated. Hine, while testifying to a conversation with Campbell, in April, 1869, when witness called upon him on behalf of Skinner for the interest upon the note, says he told Campbell the substance of Skinner's conversation with him, the witness, and then proceeds to say, "I told him that Skinner said that the note was taken from him as a special favor; that he (meaning Campbell) had claimed at that time that it was very difficult for him to raise the whole amount, and that he expected to raise that amount from Hall, and that he (Campbell) wanted him (Skinner) to take this note and give him this time to make the payment, and that he wanted him (Skinner), as a favor, not to let Hall know that he had given this note, because it might be more difficult for him to raise the money from Hall on that account; and that he (Skinner) had done so," etc.

This, in connection with the compromise agreement subsequently made, in pursuance of which Hall advanced the nine hundred dollars, may be taken, I say, as an admission on the part of the plaintiff's testator, tending to show the fraudulent and illegal purpose of the secret agreement upon

which the note was made; and the jury might, if the question had been left to them, so have found; though, as against Campbell, it was not evidence.    But if this should not be found to be the fact, then the only other inference fairly to be drawn from the evidence in the case and the claims of the plaintiff, was, that the note had been made as part of some other contemplated arrangement of, or in reference to, the judgment, which arrangement was subsequently abandoned for that made by the written compromise agreement, made five days after; and this, without further explanation, being inconsistent with the idea of leaving this note outstanding against Campbell, to be paid in addition to the compromise therein agreed upon, the note would be cut off, or rendered void between the parties.

We think, therefore, the court erred in charging the jury that "under the evidence in the cause, the plaintiff is entitled to recover if you find the defendant signed the note and delivered it to the payee."

The judgment must be reversed, with costs, and a new trial awarded.

The other Justices concurred.